**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**JESSE DANIEL BUCKLEY,**

      **Plaintiff,**

**vs.**                                                                                  **Case no. 5:06cv53-RS**

**HON. BOBBY HADDOCK, in his official
capacity as Sheriff of Washington County
and JONATHAN RACKARD, in his individual
capacity,**

      **Defendants.**

_____/

## AMENDED ORDER

Before the Court is Defendants' Motion for Summary Final Judgment (Doc. 14). The motion is denied as to Deputy Rackard.

### I. FACTS

Buckley claims that Rackard violated his rights under the Fourth Amendment because Rackard used excessive force after arresting him. Rackard asserted the affirmative defense of qualified immunity. The facts underlying the Court's decision to deny qualified immunity to Rackard are straightforward and undisputed since there is a videotape of the incident.

Buckley was stopped by Rackard on March 17, 2004, for speeding. After Buckley repeatedly refused to sign the citation, Rackard arrested Buckley. Buckley was handcuffed without any active resistance on his part. As Buckley was being led back to Rackard's patrol car, Buckley sat down on the ground with his legs crossed. Rackard repeatedly ordered Buckley to stand up, but Buckley refused and continued to sit on the ground crying. To get Rackard to move, Buckley administered a taser gun to Buckley's torso, without the darts, three successive times, causing multiple direct contacts with the

electrodes. The only apparent purpose for using the taser was to cause the restrained Buckley, who had not been violent or dangerous, to get into Rackard's car. A few minutes later, Rackard placed a willing and non-violent Buckley back in his patrol car. Because of the taser applications, Buckley suffered several burn marks, resulting in intense pain and keloid growth at the site of some burns.

## II. DISCUSSION

Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'"[1] Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir. 2003). "Whether a defendant is entitled to qualified immunity is a question of law, in other words, whether the law at the time of the incident was clearly established so that a reasonable person should have known that he was violating it." Id.  "In evaluating claims of qualified immunity, we apply the two-part Saucier test: (1) As a threshold question, a court must ask, [t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?; and (2) If a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine 'whether the right was clearly established." Id. (internal citations and quotations omitted).

In evaluating whether Buckley's Fourth Amendment right to be free from excessive force in the course of arrest was violated, the Court must determine "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). The Supreme Court has held that the following factors should guide a court's inquiry: 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the officers

---

[1] "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). It is clear that Rackard was acting within his the scope of his discretionary authority when the arrest took place, thus the burden shifts to Buckley to show that Rackard is not entitled to qualified immunity. Id.

or the others; and 3) whether he is actively resisting or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); see also, Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir.1986) (holding that, in determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted). All of the Graham factors weigh heavily in favor of Buckley - his crime was minor (speeding), he never posed a threat to the officer or the safety of anyone else, and he never actively resisted or attempted to evade arrest by flight. After viewing the videotape of the incident, it may be arguable that one application of the taser was appropriate; however, the multiple applications of force were unnecessary and grossly disproportionate. If Rackard had simply waited for back up, two officers could have lifted Buckley and carried him to the car without any application of force. As a result, Buckley has satisfied the first prong of the Saucier test.

   In order to survive Defendants' Motion for Summary Judgment, Buckley must still show that the law at the time of the incident had clearly established that the force used by Rackard was excessive. According to the Eleventh Circuit, there are two ways to prove this: 1) to point to a "materially similar case [that has] already decided that what the police officer was doing was unlawful"; or 2) to show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." Lee v. Ferraro, 284 F.3d 1188, 1199-2000 (11th Cir. 2002). The Court finds that the facts in Lee are factually analogous to this case. In Lee, the plaintiff was pulled over for a minor traffic violation, pulled out of her car, handcuffed, and after she was secured, the arresting officer slammed her head onto the trunk of her car and kept spreading her legs with his foot. In this case, Buckley was pulled over for a minor traffic violation, pulled out of his car, handcuffed, and after he was secured, the arresting officer tased him three successive times (two in rapid succession followed by a third application more than a minute later) with the electrodes directly touching Buckley's body, resulting in burns on his back.

   While "the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," under the facts of this

case, no reasonable officer could believe that using such extreme force was lawful. Id. at 1200. As the Eleventh Circuit stated, "once an arrest has been fully secured and any potential danger or risk of flight vitiated, a police officer cannot employ...severe and unnecessary force." Id. In a situation very similar to that in Lee, Rackard's actions were "so plainly unnecessary and disproportionate, no reasonable officer could have had a mistaken understanding as to whether [the] particular amount of force [was] legal in the circumstances." Id. (Internal quotations and citation omitted).  Rackard is not entitled to qualified immunity.

        **ORDERED** on March 6, 2007.

                                                            **/s/ Richard Smoak**
                                                            **RICHARD SMOAK**
                                                            **UNITED STATES DISTRICT JUDGE**