IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JESSE DANIEL BUCKLEY,

      Plaintiff,

vs.                                                    Case no. 5:06cv53-RS

HON. BOBBY HADDOCK, in his official
capacity as Sheriff of Washington County
and JONATHAN RACKARD, in his individual
capacity,

      Defendants.

_____/

<u>ORDER</u>

      Before the Court is Defendants' Motion for Summary Final Judgment (Doc. 14).
The motion is granted as to Sheriff Haddock.


<u>I.FACTS</u>

      Jesse Buckley (Buckley) claims that Officer Jonathan Rackard (Rackard) violated
his rights under the Fourth Amendment because Rackard used excessive force after
arresting him. The facts are straightforward and undisputed since there is a videotape of
the incident.

      Buckley was stopped by Rackard on March 17, 2004, for speeding. After Buckley
repeatedly refused to sign the citation, Rackard arrested Buckley. Buckley was
handcuffed without any active resistance on his part. As Buckley was being led back to
Rackard's patrol car, Buckley sat down on the ground with his legs crossed. Rackard
repeatedly ordered Buckley to stand up, but Buckley refused and continued to sit on the
ground crying. To get Rackard to move, Buckley administered a taser gun to Buckley's
torso, without the darts, three successive times, causing multiple direct contacts with the

1

electrodes. The only apparent purpose for using the taser was to cause the restrained Buckley, who had not been violent or dangerous, to get into Rackard's car. A few minutes later, Rackard placed a willing and non-violent Buckley back in his patrol car. Because of the taser applications, Buckley suffered several burn marks, resulting in intense pain and keloid growth at the site of some burns.

Buckley claims that Sheriff Bobby Haddock (Haddock), in his official capacity as Sheriff of Washington County, is liable to Buckley under 42 U.S.C. § 1983 for promulgating a policy, custom, or practice that allowed Rackard to use unconstitutionally excessive force on him.[1] Buckley alleges that Haddock did not properly supervise or train his officers to prevent such use of force, resulting in deliberate indifference to the rights of third parties and causing the violation of Buckley's constitutional rights. While Haddock was not the sheriff at the time this event occurred, it is uncontested that he properly steps in the shoes of his predecessor for purposes of this claim. See e.g. Hobbs v. Roberts, 999 F.2d 1526, 1531 (11th Cir. 1993).

## A. The Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)).  "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir.

---

[1]  "In section 1983 actions, [the Eleventh Circuit] has determined that Florida sheriffs are county officials as opposed to state officials." Hutton v. Strickland, 919 F.2d 1531,1542 (11th Cir. 1990).

1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Tipton, 965 F.2d at 998 (citing Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251, 106 S. Ct. at 2512.  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).  Thus, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir.1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985)).  However, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 251, 106 S. Ct. at 2511).

If the movant satisfies its initial burden under Rule 56(c) by demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).  Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton, 965 F.2d at 998 (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962)).

3

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255, 106 S. Ct. at 2513 (citing Adickes, 398 U.S. at 158-59, 90 S. Ct. at 1609). In light of the summary judgment standard, this Court will apply the relevant substantive law to the facts of the case.

## II. DISCUSSION

Buckley contends that "the records that [ ] Haddock, or his predecessor in office maintained were not designed to allow [ ] Haddock or his supervising officers to monitor when an Air Taser was used to deal with a legitimate threat of violent resistance and when they were simply used to punish or 'herd' suspects." (Doc. 18, Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, p. 11). In addition, Buckley claims that Haddock did not properly "supervise[], train[], or hire[] a subordinate..." Id. at p.12. As a result, Buckley argues that Haddock "created or overlooked a clear risk of future unlawful action by a subordinate", thus manifesting a "deliberate indifference toward the rights of third parties and [ ] a causal relationship to the violation." Id. at p.12-13.

Haddock argues that he is entitled to summary judgment primarily on the assumption that Officer Rackard was entitled to qualified immunity. This Court has previously held that Rackard is not entitled to qualified immunity, and as a result, the arguments submitted on that faulty premise have no relevance to this order. Haddock also argues that he believed that Rackard's use of force was "reasonable, privileged, and used in accordance with departmental standards." (Doc.19, Pretrial Stipulation, p. 2).

"Supervisory officials cannot be held liable for the acts of employees solely on the basis of respondeat superior." Geter v. Wille, 846 F.2d 1352, 1354 (11th Cir. 1988)(citation omitted). Rather, to impose § 1983 liability on a municipality, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct.

1197, 103 L. Ed. 2d 412 (1989)).[2]

The Eleventh Circuit has further defined "custom" as follows:

> To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. In addition, we have also held that a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct.

Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001)(citation and internal quotation marks omitted). The mere fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee permits no inference of municipal culpability and causation.  McDowell, 392 F.3d at 1289 (citation omitted). Finally, "only those officials who have final policymaking authority may render the municipality liable under Section 1983." Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999)(emphasis in original). Neither party addresses this issue, and as such, the Court presumes both parties agree that Haddock possessed final policymaking authority. Since the Court has already addressed the issue of the violation of Buckley's constitutional rights in its previous order denying Rackard's Motion for Summary Judgment, the remainder of this order will focus on whether the Washington County Sheriff's Office (WCSO) had a custom or policy that constituted deliberate indifference to that constitutional right and caused the violation.

The WCSO had a detailed policy that dictates how and when an air taser should be utilized. (Doc. 14, Exhibit E). In particular, it instructed that an "AIR TASER may be used to control a dangerous or violent subject when deadly physical force does not appear to be justified and/or necessary; or attempts to subdue the subject by other conventional tactics have been, or will likely be ineffective in the situation at hand; or

---

[2] "Supervisor liability is also permitted in those incidents in which the supervisor personally participates in the deprivation." Geter v. Wille, 846 F.2d 1352, 1355 (11th Cir. 1988). Nothing in the record demonstrates that the Sheriff personally participated in the allegedly unconstitutional treatment of Buckley.

there is reasonable expectation that it will be unsafe for officers to approach within contact range of the subject." (Doc. 14, Exhibit E). The policy mandates that "upon encountering a situation which may require the use of the AIR TASER" a field officer must request a back-up and a supervisor with an AIR TASER unit. (Doc. 14, Exhibit E). In addition, the policy instructs that "when practical, don't escalate the situation prior to the arrival of a back-up officer and equipped supervisor." Id. There is no specific instruction in the policy on how and when an officer should use an air taser without the darts.

Nevertheless, despite the lack of a separate policy on use of an air taser without darts, it is logical that WCSO officers must, at a minimum, follow the general guidelines established for use of the air taser. Rackard did not follow this policy. Ultimately, however, the internal investigation found that the complaint filed on behalf of Buckley alleging excessive force was "unfounded." (Doc. 14, Exhibits G, H). The report did not make any findings whether Rackard followed WCSO policy or custom with respect to the deployment of the air taser.

In support of his contention, Buckley primarily relies on the prior supervisory taser reports (Doc. 14, Exhibit I) submitted to the sheriff by his officers after each use of their air taser. Buckley contends that of the 45 supervisory taser reports provided by Haddock, only 28 "showed a situation that suggested a fear of violence. An additional 17 uses of force were marked 'Other' or 'Warrant Service' without any additional designations that indicted violence." (Doc. 20, Plaintiff's Trial Brief, p. 3). Buckley argues that these records could not have provided WCSO supervisors with a "consistent, reliable way [] to monitor when the Air Taser was used in situations where there was a legitimate fear of violence." ( Doc. 20, Plaintiff's Trial Brief, p. 4).

The supervisory taser reports provide detailed information on each air taser use by an officer, including how the air taser was deployed, the nature of the injuries that resulted (if any), the approximate distance between the officer and the targeted individual, whether a dart probe contact or stun gun contact occurred, etc. After a thorough review of the reports submitted, the Court finds that the reports were filled out in a complete fashion, and the questions were generally answered in a thorough

fashion. While there were several instances in which the incident type is described as "Other", this is not surprising since the police encounter such a wide array of diverse situations. The detailed questions on the supervisory taser report (including whether the suspect was under the influence, a description of any injury that occurred, a drawing of the application areas, and a synopsis of the incident) provided all the relevant information to the WCSO supervisors regarding each air taser incident. Buckley does not even attempt to suggest what other information Haddock would need in order to properly ascertain whether his officers were deploying their air tasers within the confines of WCSO policies.

The supervisory taser reports in the record also provide sufficient information to reasonably conclude that using the air taser without its darts is a permitted custom in the WCSO; however, Buckley does not point to any specific evidence indicating that Haddock's policy or custom permitted (or tolerated) the use of the air taser on other persons in Buckley's situation. While internal affairs found that Rackard's actions were appropriate under this circumstance, it is unreasonable to claim that as a result, the use of electric force at this level was an established policy or custom at the Sheriff's department. To establish liability under §1983, the "custom" must be widespread. In addition, Buckley does not provide evidence of any prior complaints or lawsuits involving the WCSO's use of air tasers.

Finally, as for Buckley's allegations that this is a "neglect of risk " situation, there is no evidence in the record indicating that the Haddock failed to properly train, screen, supervise, discipline, or control his officers or failed to investigate any complaints with respect to the use of electric weapons. Even assuming that Rackard's conduct violates the Constitution will not be sufficient to overcome Buckley's evidentiary burden at the summary judgment stage. See e.g., McDowell, 392 F.3d at 1290 ("This threshold identification of a custom or policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. This prevents the imposition of liability based upon an isolated incident")(internal citation and quotation marks omitted); Marchman v. City of Clearwater, 2006 WL 314511, *8 (M.D.

Fla. 2006) ("Even assuming that Reeves' conduct violated Plaintiff's constitutional rights, a single incident of unconstitutional activity is insufficient to impose liability for failure to train or supervise against a municipality"). Thus, without any specific evidence to the contrary, it is clear that no reasonable jury could conclude that any of Haddock's actions manifest a deliberate indifference towards the rights of third parties. The Eleventh Circuit has consistently held that "conclusory allegations without specific supporting facts have no probative value." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir.2000).  If Rackard had simply followed the WCSO's air taser policy prior to deploying his air taser (with or without darts), it is very likely that this event would have had a different ending.

**Conclusion**

1. Defendant's Motion for Summary Judgment (Doc. 14) is granted for Sheriff Haddock, in his official capacity.

2. The clerk shall enter judgment dismissing Plaintiff's claims against Sheriff Haddock, in his official capacity, with prejudice.

**ORDERED** on March 21, 2007.

> **/s/ Richard Smoak**
> **RICHARD SMOAK**

8